J-S25015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
HAKIM MONTILLJA :
:
Appellant : No. 2279 EDA 2024

Appeal from the Judgment of Sentence Entered July 29, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002549-2023

BEFORE: PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.: **FILED AUGUST 19, 2025**

Hakim Montillja appeals from the judgment of sentence entered on July 29, 2024 for his convictions of two counts of driving under influence of alcohol or controlled substance ("DUI") and one count each of careless driving, driving on roadways laned for traffic, and driving vehicle at safe speed.[1] Montillja argues the trial court erred in denying his motion to suppress the blood results because the police failed to comply with 75 Pa.C.S.A. § 1547. After careful review, we affirm.

We discern the following facts from our review of the suppression hearing transcript. On June 27, 2022, police were dispatched to a single vehicle accident with injuries. Montillja was the operator of the vehicle

_____

[1] 75 Pa.C.S.A. §§ 3802(d)(1)(i) and (iii), 3714(b), 3309(1), and 3361, respectively.

involved in the incident. His passenger was killed as a result of the accident. Montillja was cooperative with police and explained it started raining suddenly, he tried to slow down but lost control and hit a tree. An eyewitness to the accident confirmed Montillja was telling police the truth.

Police did not observe any signs of impairment or intoxication when speaking with Montillja. However, when asked, Montillja admitted smoking marijuana approximately 16 hours prior to the accident. There was no evidence of recent marijuana usage in the vehicle or at the scene of the accident. Police asked Montillja, while still at the scene, whether he would agree to provide a blood sample. Montillja agreed. Montillja was transported to the hospital in an ambulance to receive treatment. At the hospital, police provided Montillja with a standard consent form, not the DL-26 form[2], and asked again if he would provide a sample of his blood.

The police explained to Montillja the purpose of the blood sample was "to see if there was any alcohol or narcotics that may be in his blood." N.T. Suppression Hearing, 3/7/24, at 61. The form signed by Montillja stated:

> I, Hakim Montillja have been requested by Trooper Matthew Orkisz of the Pennsylvania State Police to give my consent for police officers to search place(s), item(s), or vehicle(s) described above for the items described above. I have been told that I do not have to give my consent. I understand that I have the right to refuse this request, and that the police may not be able to conduct this search without a search warrant unless I give my consent.

_____

[2] The DL-26 form provides those arrested or suspected of DUI with their rights pursuant to section 1547. **See** 75 Pa.C.S.A. § 1547.

> Nonetheless, I voluntarily give my consent to the police to conduct this search.

Exhibit C-1, at 1 (pagination added for ease of reference; unnecessary capitalization omitted).

Montillja filled in his own name on the form and signed and dated the form. *See* N.T. Suppression Hearing, 3/7/24, at 64-65. The "place(s), item(s) or vehicle(s) to be searched" are listed as "the person of Hakim Westley Montillja" and the "item(s) to be searched and seized, if found" are listed as "two vials of human blood." Exhibit C-1, at 1. Montillja was not under arrest at the time police requested or obtained the blood sample.

Montillja was charged by criminal complaint filed February 27, 2023, after police received the results of the blood test. Montillja filed an omnibus pretrial motion to suppress the results of the blood test, asserting the blood was obtained illegally because the police did not read Montillja the DL-26 form and Montillja did not provide voluntary consent. After a hearing, the trial court denied the motion. A stipulated bench trial was held on June 24, 2024. The trial court found Montillja guilty as noted above and sentenced him to 6 months' probation, with the first 30 days on house arrest with electronic monitoring and costs and fines. Montillja timely appealed and complied with the trial court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Montillja raises one issue for our review:

> Whether the court below erred when it denied [] Montillja's motion to suppress blood results because the failure by police to comply

with 75 Pa.C.S.[A.] § 1547 rendered his purported consent to warrantless testing invalid?

Appellant's Brief, at 5.

We begin with our scope and standard of review:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the trial court's conclusions of law are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Krenzel*, 209 A.3d 1024, 1027-28 (Pa. Super. 2019) (brackets and citation omitted).

Montillja argues police suspected him of DUI and were therefore required to provide him with the warnings contained in the DL-26 form and required by section 1547. *See* Appellant's Brief, at 13-14. Montillja asserts *Krenzel* is directly on point and requires suppression of the blood results obtained here. *See id.* at 12-14. We disagree.

It is well-settled that:

The Fourth Amendment to the Constitution of the United States and Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania both prohibit unreasonable searches and seizures. The administration of a blood test, performed by an agent of, or at the direction of the government, constitutes a search under both the United States and Pennsylvania Constitutions. If an officer performs a blood-draw search without a warrant, it is unreasonable and therefore constitutionally impermissible, unless an established exception applies. Exceptions to the warrant requirement include the consent exception. For the consent exception to apply, the consent must be voluntary.

*Commonwealth v. Johnson*, 188 A.3d 486, 489 (Pa. Super. 2018) (citations and quotation marks omitted).

The Pennsylvania Supreme Court provided guidance on determining whether consent was voluntarily provided:

While there is no hard and fast list of factors evincing voluntariness, some considerations include: 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with law enforcement personnel.

*Commonwealth v. Gillespie*, 821 a.2d 1221, 1225 (Pa. 2003) (citation and quotation marks omitted).

Section 1547 provides:

**(a) General rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcohol content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of

section … 3802 (relating to driving under influence of alcohol or controlled substance) … .

**(b) Civil penalties for refusal.**—

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person[.]

\*\*\*

(2) It shall be the duty of the police officer to inform the person that:

(i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and

(ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3804(c) (relating to penalties).

75 Pa.C.S.A. § 1547(a), (b)(1), (2).

As required by section 1547, a person has been deemed to have consented to a blood test if police have reasonable grounds to believe the person violated section 3802 (i.e., is DUI). **See id.** Our Supreme Court addressed this language in **Commonwealth v. Myers**, 164 A.3d 1162 (Pa. 2017). There, the suspect was unconscious when police read him the DL-26 form. **See Myers**, 164 A.3d at 1165. The Court found that, although the

suspect was "deemed to have given consent" by operation of section 1547, the individual is entitled to make his own decision whether or not to consent to a blood test. *Id.* at 1170-71. The Court explained:

> By operation of the implied consent statute, once a police officer establishes reasonable grounds to suspect that a motorist has committed a DUI offense, that motorist "shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcohol content of blood or the presence of a controlled substance." 75 Pa.C.S.[A]. § 1547(a). Notwithstanding this provision, Subsection 1547(b)(1) confers upon all individuals under arrest for DUI an explicit statutory right to refuse chemical testing, the invocation of which triggers specified consequences.

*Id.* (some citations omitted).

In *Krenzel*, this Court relied on *Myers* and found an arrestee's consent to a blood draw was not voluntary because she was not provided with the warnings contained in the DL-26 form and section 1547. *See Krenzel*, 209 A.3d at 1031. Montillja asks us to rely on *Krenzel* and find his consent similarly invalid because he was not read the DL-26 form nor provided the required warnings contained in section 1547. *See* Appellant's Brief, at 14.

The notable distinction between Montillja's situation and *Krenzel* is Krenzel was under arrest at the time her blood was drawn. *See Krenzel*, 209 A.3d at 1026. The Commonwealth highlights this distinction in their brief and argues only those under arrest for DUI must be read the warnings contained in the DL-26 form and section 1547. *See* Appellee's Brief, at 9-10. We agree with the Commonwealth.

"Reasonable grounds to believe the person" is or has committed a DUI offense has been interpreted as requiring probable cause. *Commonwealth v. Thur*, 906 A.2d 552, 567 (Pa. Super. 2006) (citation omitted). As such, if police have "reasonable grounds," i.e., probable cause, to arrest someone for DUI, section 1547 requires them to read the warnings. As this Court noted in *Commonwealth v. Gump*, 253 A.3d 290, 524 WDA 2020 (Pa. Super. filed April 16, 2021) (unpublished memorandum): "Unlike the defendant in *Krenzel*, at the time of the [June 27, 2022] accident, [Montillja] did not face imminent arrest or the penalties of [s]ection 1547 if he refused to consent to the blood test." *Gump*, 253 A.3d at *7.[3]

With that background in mind, we turn to the trial court's factual findings:

> The DL-26 [f]orm is read to a defendant when an officer suspects there are signs of impairment or otherwise intoxication.
>
> In this case, the DL-26 [f]orm was not warranted because the troopers did not have the level of articulable suspicion necessary to appropriately read the [d]efendant this [f]orm.

Trial Court Opinion, 12/20/24, at 4.

The trial court's factual findings are supported by the record. Police testified they did not observe any signs of intoxication nor anything that would merit reading the DL-26 form. *See* N.T. Suppression Hearing, 3/7/24, at 16,

---

[3] Pursuant to Pa.R.A.P. 126(b), we may rely on unpublished memorandum issued after May 1, 2019, for their persuasive value.

45, 57-58. Police did not observe any marijuana or anything that might indicate Montillja smoked marijuana that day. **See id.** at 73. Because the police did not have probable cause to arrest Montillja for DUI, they were not required to read the DL-26 form or provide the section 1547 warnings.[4]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/19/2025

_____

[4] We recognize that Montillja admitted to smoking marijuana approximately 16 hours before the accident. **See** N.T. Suppression Hearing, 3/7/24, at 45. Montillja has not provided us, nor were we able to find after our own research, any case law providing the admission to smoking marijuana a significant period of time prior to driving provides an officer probable cause to arrest for suspicion of DUI. As such, based upon the facts in this case, we find the police officers did not have probable cause to arrest Montillja for suspicion of DUI.